UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HEATHER KNOX, on behalf of herself and others similarly situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>PARTY CITY HOLDINGS, INC., a Delaware corporation,<br><br>               Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C § 227**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1.      Plaintiff Heather Knox ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages and injunctive relief necessitated by the unlawful actions of Defendant Party City Holdings, Inc. ("Party City" or "Defendant").

2.      This case is brought to enforce the consumer privacy provisions afforded by the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3.      Party City negligently, knowingly and/or willfully placed unsolicited automated text messages to Plaintiff's cellular phones in violation of the TCPA.

4.      Party City has violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system ("ATDS") to bombard consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

5.      Plaintiff alleges as follows upon personal knowledge as to herself and her own experiences and, as to all other matters, upon information and belief including due investigation conducted by her attorneys.

## JURISDICTION AND VENUE

6.      This Court has federal question subject matter jurisdiction over this class action lawsuit further to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

7.      This Court has personal jurisdiction over Party City because, during the relevant time period, its principal place of business was in the State of New York.  Party City's telemarketing campaign, which caused harm to Plaintiff and purported class members across the country, emanated from Elmsford, New York. As such, Party City has purposefully availed itself of the laws and markets of the State of New York and this judicial district.

8.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant has its principal place of business in Elmsford, New York. As such, Party City resides in the Southern District of New York.

## PARTIES

9.      Plaintiff Heather Knox is an individual who, at all relevant times, resided in Wrightville, Georgia.

10.     Upon information and belief, Party City Holdings, Inc. is a corporation organized under the laws of the State of Delaware and with its principal place of business in Elmsford, New York.

11.     Party City, through its subsidiaries, designs, manufactures, distributes and retails decorated party goods, such as costumes, table ware and games.[1]

12.     Party City, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

---

[1]      "Party City Holdings, Inc.," *available at* https://www.bloomberg.com/profile/company/1040664D:US (last accessed February 25, 2020); "About Party City," *available at* https://www.partycity.com/about-us (last accessed February 25, 2020).

## TCPA BACKGROUND

13.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

14.    The TCPA was designed to prevent calls and messages like the ones detailed herein, as well as to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

15.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11.

16.    Specifically, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

17.    Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call [...]." *Id*. at §§ 12-13; *see also Mims*, 132 S. Ct. at 744.

18.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

19.     The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

20.     Text messages are calls and are subject to the TCPA. *See, e.g., Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

21.     47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiffs are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

22.     47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or

cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

23.     To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; consent is an affirmative defense to liability under the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (finding Defendant "did not show a single instance where express consent was given before the call was placed.").

24.     The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

25.     Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(478) 279-XXXX.

26.     On or about December 14, 2019, at approximately 5:32PM, Party City sent an automated text message to Plaintiff's cellular telephone number from the number 94467.

27.     On or about December 16, 2019, at approximately 3:11PM, Party City sent a second automated text message to Plaintiff's cellular telephone number from the number 94467.

28.     True and correct copies of the December 14, 2019 and December 16, 2019 text messages sent by Party City are reproduced below:



29.     The website links in the text message (http://partycity.attn.tv/I/WXO/oJNsH and http://partycity.attn.tv/I/o3R/oJNsH) direct to Party City's website.

30.     On or about December 30, 2019, at approximately 5:18PM, Party City sent a third automated text message to Plaintiff's cellular telephone number from the number 94467.

31.     A true and correct copy of the December 30, 2019 text message sent by Party City is reproduced below:



32.     The website link in the text message (http://partycity.attn.tv/I/RzH/oJNsH) redirects to Party City's website.

33.     After receiving these unsolicited, advertisement text messages, Plaintiff retained counsel.

34.     On January 14, 2020, Plaintiff's counsel sent a certified letter setting forth the facts stated herein (the "January Letter").

35.     The January Letter explained that Plaintiff never provided Defendant with prior consent to receive any advertising text message.

36.     The January Letter further provided that "[i]f for any reason you believe the information provided above is incomplete and/or incorrect, please let us know immediately. If we do not hear from you by February 6, 2020, we will conclude that the facts alleged are correct and proceed accordingly."

37.     On January 17, 2020, Defendant signed for the Certified Letter.

38.     Thereafter, Defendant inexplicably ignored Plaintiff's January Letter and Plaintiff's good faith attempts to resolve this matter.

39.     In fact, four days after the deadline set out in the January Letter, Defendant willfully and knowingly sent *another* unsolicited text message to Plaintiff.

40.     Specifically, on or about February 10, 2020, at approximately 1:32PM, Party City sent an automated text message to Plaintiff's cellular telephone number from the number 94467.

41.     On or about February 13, 2020, at approximately 2:50PM, Party City sent a fifth automated text message to Plaintiff's cellular telephone number from the number 94467.

42.     On or about February 21, 2020, at approximately 3:47PM, Party City sent a sixth automated text message to Plaintiff's cellular telephone number from the number 94467.

43.     True and correct copies of the February 10, 2020, February 12, 2020 and February, 21, 2020 text message sent by Party City are reproduced below:



44.    The website links in the text messages (http://partycity.attn.tv/I/GDC/oJNsH; http://partycity.attn.tv/I/giT/oJNsH; and   http://partycity.attn.tv/I/DrE/oJNsH) redirect to Party City's website.

45.    Plaintiff did not give Defendant prior express written consent to send text messages to her cellular telephone number by using an automatic telephone dialing system.

46.     The text messages Party City sent to Plaintiff consisted of a pre-written template of impersonal text, and was identical to unsolicited text messages Defendant sent to other individuals.

47.     The language in the messages was automatically generated and inputted into a pre-written text template without any actual human intervention in the drafting or sending of the message; the same exact message was sent to thousands of other consumers.

48.     The telephone system Party City used to send the messages constitutes an ATDS as defined by 47 U.S.C. § 227(a)(1).

49.     Defendant, like several companies, used a short code, defined as "a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital advertising."[2]

50.     Companies like Defendant use short codes to "bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts."[3]

51.     Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—the advertisement and marketing text messages at issue were sent by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

52.     Upon information and belief, no human directed any single text message to Plaintiff's number.

---

[2]     *See* https://usshortcodes.com/faqs (last accessed February 25, 2020).

[3]     *Id.*

53.    In addition, upon information and belief, the hardware and software combination utilized by Party City has the capacity to store and dial sequentially generated numbers, randomly generated numbers or numbers from a database of numbers.

54.    The texts were not sent to Plaintiff and the putative class for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

55.    To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

56.    Upon information and belief, the Platform has the capacity to store telephone numbers.

57.    Upon information and belief, the Platform has the capacity to generate sequential numbers.

58.    Upon information and belief, the Platform has the capacity to dial numbers in sequential order.

59.    Upon information and belief, the Platform has the capacity to dial numbers from a list of numbers.

60.    Upon information and belief, the Platform has the capacity to dial numbers without human intervention.

61.    Upon information and belief, the Platform has the capacity to schedule the time and date for future transmission of text messages.

62.    To transmit the messages at issue, the Platform, *inter alia*, automatically executed the following steps:

(1)    The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

11

(2)    The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

(3)    Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers; and

(4)    Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

63.    The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

64.    The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



65.    Defendant's unsolicited marketing text messages caused Plaintiff actual harm. Specifically, Plaintiff wasted several seconds of her time reviewing each of Defendant's unwanted messages.

66.     Furthermore, Defendant's text message took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that text message solicitations like the ones sent by Defendant present a "triple threat" of identity theft, unwanted cell phone charges, and slower cell phone performance).

67.     Defendant's text message also can slow cell phone performance by taking up space on the recipient phone's memory. *See* https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

68.     Lastly, the text messages caused the following harms, including invasion of privacy, nuisance and, intrusion on seclusion. Defendant's text message also inconvenienced Plaintiff and caused disruption to his daily life. Plaintiff receipt of the text messages disturbed her domestic peace.

69.     Party City did not have Plaintiff's prior express consent to place automated text messages to her on her cellular telephone.

70.     Receipt of Defendant's unauthorized message drained Plaintiff's phone battery and caused her additional electricity expenses and wear and tear on her phone and battery.

71.     Defendant did not place the text messages for an emergency purpose.

72.     Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

## STANDING

73.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the

conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See,*
*Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife,* 504 U.S. 555,
560 (1992).

### The "Injury In Fact" Prong

74.    Plaintiff's injuries in fact must be both "concrete" and "particularized" in order to
satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo. Spokeo*, 136
S.Ct. at 1547.

75.    For an injury to be "concrete" it must be a de facto injury, meaning that it actually
exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case,
Defendant sent telephone messages to Plaintiff's cellular telephone, using an ATDS. Such text
messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All these injuries are
concrete and de facto.

76.    For an injury to be "particularized" means that the injury must "affect the Plaintiff
in a personal and individual way." *Spokeo, Inc.,* 136 S.Ct. at 1543.  In this case, Defendant invaded
Plaintiff's privacy and peace by texting her cellular telephone, and did this with the use of an
ATDS. Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and
reading the text message. All of these injuries are particularized and specific to Plaintiff, and will
be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

77.    The second prong required to establish standing at the pleadings phase is that
Plaintiff must allege facts to show that her injuries are traceable to the conduct of Defendant.

78.    The above text messages were directly and explicitly linked to Defendant. The
number from which the texts were sent and the link embedded in the texts both belong to Party

City. These text messages are the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

79.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

80.    In the present case, Plaintiff's Prayers for Relief include a request for damages for each text message sent by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

81.    Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

### CLASS ACTION ALLEGATIONS

82.    Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom Defendant delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification, and for whom (5) Defendant did not claim to have obtained prior express written consent, or claim to have obtained prior express written consent in the same manner they claim to have obtained prior express written consent from Plaintiff.

83.    Excluded from the Class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

84.    Plaintiff reserves the right to redefine the Classes and to add subclasses as appropriate based on discovery and specific theories of liability.

85.    Numerosity: Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable.

86.    The exact number of the members of the Class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of Class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

87.    Ascertainability: The members of the class are ascertainable because the Class is defined by reference to objective criteria.

88.    In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

89.    Typicality: Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to their cellular telephones from an ATDS. Thus their injuries are typical to Class Members. As it did for all members of the class, Defendant used an ATDS to deliver a text message to Plaintiffs' cellular telephone numbers.

90.    Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice and procedure on the part of Defendant.

91.    Plaintiff's claims are based on the same theories, as are the claims of the members of the Class.

92.    Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the Class were damaged thereby.

93.    Adequacy: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the Class with whom they are similarly situated, as demonstrated herein. Plaintiff acknowledges that she have an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

94.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

95.    Plaintiff will vigorously pursue the claims of the members of the class.

96.    Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

97.    Plaintiff's counsel will vigorously pursue this matter.

98.    Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

99.    Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

100.    Predominance: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

101.    Commonality: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

    a.    What are Defendant's conduct, pattern, and practice as they pertain to

delivering advertisement and telemarketing text messages;

b.    Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to send text messages to Class Members;

c.    Whether Defendant's conduct violated the TCPA;

d.    Whether Defendant should be enjoined from engaging in such conduct in the future; and

e.    The availability of statutory penalties.

102.   Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

103.    Defendant has acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

104.    Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

105.    This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**COUNT I**
**Negligent Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(b)(1)(A)(iii)**
**(On behalf of Plaintiff and the TCPA Class)**

106.    Plaintiff incorporates herein all preceding factual allegations.

107.    Defendant and/or its agents placed unsolicited text messages to Plaintiff's cellular telephone and the other members of the TCPA Class using an ATDS.

108.    Defendant made these text messages *en masse* without the consent of Plaintiffs and the other members of the TCPA Class.

109.    Defendant's conduct was negligent, or willful or knowing.

110.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the TCPA Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

111.    Plaintiff and members of the putative TCPA class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by sending texts, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

112.    Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to make advertising and marketing texts to Plaintiffs' cellular telephone number without prior express written consent.

113.    As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

## COUNT II
### Knowing And/Or Willful Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b)(1)(A)(iii)
### (On behalf of Plaintiff and the TCPA Class)

114.    Plaintiff incorporates herein all preceding factual allegations.

115.    Defendant - or third parties directed by Defendant - used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

116.    These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior

express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

117.    Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

118.    The foregoing acts and omissions of Defendants constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, et seq.

119.    As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, et seq., Plaintiff and the class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

120.    Plaintiff and the class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing its violative behavior, including continuing to deliver text messages to Plaintiff's cellular telephone number, and to the cellular

21

telephone numbers of the members of the class, without prior express written consent;

f)   Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B) in the amount of $500.00 per unlawful text message to Plaintiff, and each class member;

g)   Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3)(C) in the amount of $1500.00 per unlawful text message to Plaintiff, and each class member;

h)   Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i)   Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j)   Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated:  March 27, 2020                               **DeNITTIS OSEFCHEN PRINCE, P.C.**

By:  _____

Ross H. Schmierer, Esq. (RS 7215)
Stephen P. DeNittis, Esq.
315 Madison Avenue, 3rd Floor
New York, New York 10017
(T): (646) 979-3642
rschmierer@denittislaw.com

*Counsel for Plaintiff and the Putative Class*